UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIMINAL NO:  05-360 (JNE/JSM)

     Plaintiff,

v.                                           <u>REPORT AND RECOMMENDATION</u>

TYRON THOMAS,

     Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Tyron Thomas's Motions for Suppression of Evidence from Search and Seizure [Docket No. 16], to Dismiss for Restoration of Civil Rights [Docket No. 18], and to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 22].   Additionally, at the motion hearing, defendant made an oral motion to suppress statements, which this Court will also address.

Assistant United States Attorney Michael Dees appeared on behalf of the Government; Kevin O'Brien appeared on behalf of defendant Tyron Thomas, who was personally present.

Based upon the pleadings, testimony taken from Special Agent David Voth and Officer Grant Snyder, exhibits submitted at the hearing, pre-hearing submissions, and post-hearing submissions, it is recommended that:

1.     Defendant Tyron Thomas's Motion for Suppression of Evidence from Search and Seizure [Docket No. 16] be **DENIED** for the reasons stated in the memorandum.

2.     Defendant Tyron Thomas's Motion to Dismiss for Restoration of Civil Rights [Docket No. 18] be **DENIED** as moot based on the representations of the Government in its response to defendant's pretrial motions and representations of defendant's counsel at the hearing on the pretrial motions.

3.     Defendant Tyron Thomas's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 22] be **DENIED** for the reasons stated in the memorandum.

4.     Defendant Tyron Thomas's oral Motion to Suppress Statements be **DENIED** for the reasons stated in the memorandum.

## I.     <u>FACTUAL BACKGROUND</u>

Special Agent David Voth testified at the hearing on pretrial motions that he was involved with the transportation of defendant Thomas to his initial appearance in Federal Court in Minneapolis.  Specifically, Special Agent Voth testified as follows:

On November 10, 2005, Special Agent Voth and Officer Timothy Eck transported Thomas from the Hennepin County Workhouse to the United States Marshals Service in Minneapolis.  Special Agent Voth did not administer to Thomas the <u>Miranda</u> warning before the transport.

Special Agent Voth placed Thomas in the car used to transport him to Minneapolis.  Special Agent Voth did not ask Thomas any questions, but did inform

2

Thomas that he was being taken to Minneapolis federal court to appear before a federal judge. After that statement, Thomas asked a number of questions, which Special Agent Voth answered,[1] including if he was being transported to Federal Court "because it was a gauge." See Gov't Ex. 1. The conversation between Special Agent Voth and Thomas was not recorded.

Officer Grant Snyder also testified at the hearing on pretrial motions that he was involved with surveillance of Thomas and seizure of a gun. Specifically, Officer Synder testified that on October 13, 2005, as he was performing surveillance at the corner of 31st Avenue and 6th Street North, Officer Snyder watched Thomas exit an apartment building located at 3101 North 6th Street and heard him say "I've got my burner, y'all." Officer Synder then observed Thomas as he walked down to the street to the corner where Officer Snyder saw Thomas take a short-barreled shotgun from his jacket, fire a round from the gun and then run behind the apartment building from which he had exited. A short time later, Officer Synder saw Thomas return to the spot where he fired the gun, but Thomas did not have the gun. Thomas was then placed under arrest. Once other officers arrived on the scene, Officer Synder directed them to the area behind the apartment building where Thomas had gone and the gun was found in some bushes in that area.

Special Agent Voth also testified that the gun did not have a serial number and that it was not registered. He also testified that on October 14, 2005, Thomas was interviewed by Dave Burbank. At the interview, Thomas denied possession of the gun.

---

[1]     Thomas also asked questions such as "Why am I going to federal court?"  "Will an attorney be there?  "Where will I be housed?"

## II.   DISCUSSION

### A.   Motion to Suppress Statements, Admissions, and Answers

Thomas argued that his statement "Is this because it was a gauge?" should be suppressed because Special Agent Voth should have known that communicating to him that he was being charged in Federal Court with a firearms violation was reasonably likely to elicit an incriminating response from Thomas, in violation of his Fifth Amendment rights.  Thomas also argued that his Sixth Amendment right to counsel was violated.

In response, the Government argued that Thomas's interaction with Special Agent Voth while being transported was not the functional equivalent of an interrogation because all that Special Agent Voth did was tell Thomas why he was there and the reason he was taking Thomas into federal custody.  According to the Government, such actions were not the type of conduct that police should know is reasonably likely to elicit an incriminating response.  The Government further argued that it was Thomas who asked the question of Special Agent Voth, not the other way around.

### 1.   Fifth Amendment

In order to decide whether the statements made by Thomas on November 10, 2005, should be suppressed based on the Fifth Amendment, this Court must first determine whether Thomas was (1) in custody, and (2) being interrogated.  See United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (finding the protections afforded by Miranda are only triggered when an individual "is both in custody and being interrogated") (citation omitted).

4

a.    Custody

Under Miranda, an individual must be advised of his or her right to be free from compulsory self-incrimination and the right to the assistance of an attorney any time the individual is taken into custody for questioning.  Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); see also Hatten, 68 F.3d at 261 (holding that "[t]he protections afforded by Miranda are only triggered when an individual 'is both in custody and being interrogated'").  "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way."  Miranda, 384 U.S. at 444.  The determination of whether an individual is in custody at a particular time depends on "the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody."  Griffin, 922 F.2d at 1347 (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)).

Here, there is no dispute that Thomas was in custody at the time he made the statement he now seeks to suppress.

b.    Interrogation

"Interrogation" means "questioning initiated by law enforcement officers." Miranda, 384 U.S. at 444.  The term "interrogation" is defined as "'express questioning or its functional equivalent.'  This includes 'any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response . . .'"  United States v. Henderson, 770 F.2d 724, 728 (8th Cir. 1985) (emphasis in original) (quoting Rhode

<u>Island v. Innis</u>, 446 U.S. 291, 300-301 (1980); <u>United States v. Hatten</u>, 68 F.3d 257, 261 (8th Cir. 1995)).  Thus, the test for determining whether questioning is an "interrogation" within the meaning of <u>Miranda</u>, is whether, under all of the circumstances involved in a given case, questions are reasonably likely to elicit an incriminating response from the suspect.  <u>See</u> <u>Innis</u>, 446 U.S. at 300-01.

Even though this Court has found that Thomas was in custody at the time he made the statements to the officers at the time of his transport to his initial appearance in Federal Court, Thomas's motion to suppress his statement about the "gauge" must be denied because there is no evidence that it was the product of an interrogation.  <u>See</u> <u>Innis</u>, 446 U.S. at 299.  In this regard, the Eighth Circuit has held:

> Statements volunteered by a suspect during the course of routine arrest procedures were not the products of interrogation, and that custodial statements made on the suspect's own initiative are not subject to the safeguards of <u>Miranda</u>.  <u>Miranda</u> does not protect an accused "from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."

<u>United States v. Cotton</u>, 223 F.Supp.2d 1039, 1048 (D. Neb. 2002) (quoting <u>Butzin v. Wood</u>, 886 F.2d 1016, 1018 (8th Cir. 1989) (internal citations omitted)).  Initiation occurs by a defendant when the defendant evinces "a willingness and a desire for a generalized discussion about the investigation."  <u>Holman v. Kemna</u>, 212 F.3d 413, 417 (8th Cir. 2000).

The undisputed record shows that Thomas made the statement about the "gauge" after the officers told Thomas that he was being transported to Federal Court for an initial appearance.  This statement was all part of a set of questions by Thomas that are normally attendant to arrest and custody (e.g. "Why am I going to federal court?"  "Will an attorney be there?  "Where will I be housed?").  The record also shows

6

that Thomas volunteered the statement without any questioning on behalf of the officers.  Under these circumstances, where the officers did not ask any questions that were reasonably likely to elicit an incriminating response from Thomas and all evidence suggests that Thomas volunteered the statement, the Court finds no basis for suppressing Thomas's statement about the "gauge."

### 2.   Sixth Amendment

The Sixth Amendment provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  The Supreme Court has held that "an accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel.'"  Fellers v. United States, 540 U.S. 519, 523, 124 S.Ct. 1019, 1022 (2004) (quoting Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); citing Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (holding that the Sixth Amendment does not bar postindictment questioning in the absence of counsel if a defendant waives the right to counsel)).  The deliberate-elicitation standard has been consistently applied in subsequent Sixth Amendment cases and has been expressly distinguished from the Fifth Amendment custodial-interrogation standard. Fellers, 540 U.S. at 524.  Therefore, in order for Thomas to prevail on the claim that his Sixth Amendment right to counsel was violated, he must show that his right to counsel had attached, that Special Agent Voth was a government agent, and that Special Agent

Voth deliberately elicited incriminating statements from him.   See Moore v. United States, 178 F.3d 994, 999 (8th Cir. 1999).

Here, there is no dispute that that Thomas's right to counsel had attached and that Special Agent Voth was a government agent.   Thus, the question is whether Special Agent Voth deliberately elicited incriminating statements from Thomas.   See Moore, 178 F.3d at 999.

Thomas argued that the only difference between this case and that of Fellers is that the officers went to the workhouse, instead of his home, to take him into federal custody.   The Court disagrees.   In Fellers, the Court found "there was no question that the officers in this case 'deliberately elicited' information" from the defendant where the officers went to the defendant's home and told the defendant that they were there to discuss his involvement in methamphetamine distribution and his association with certain charged co-conspirators.   Fellers, 540 U.S. at 521, 524.   Here, Thomas had previously been arrested and was already in jail.   In addition, Special Agent Voth did not pick up Thomas for the purpose of discussing his involvement in a crime; rather he went to pick up Thomas to transport him to his initial appearance.   There is nothing in the record to suggest that by telling Thomas where he was going and why he was being transported that Special Agent Voth was doing anything to deliberately elicit information from Thomas regarding his involvement in a crime.   In this case, where there is no evidence to support Thomas's contention that his Sixth Amendment right to counsel was violated, the Court finds no basis for suppressing Thomas's statements.

For all of these reasons, this Court recommends that Thomas's motion to suppress statements be denied.

**B.**   **Motion to Suppress Evidence**

Thomas asserted that the search and seizure of the shotgun should be suppressed for several reasons.  First, Thomas argued that the seizure of the shotgun was not a product of a search incident to a valid arrest because the search for the firearm extended to an area too removed from the site of Thomas's arrest to be allowed as a search incident to an arrest.   Second, Thomas claimed that no exigent circumstances existed in order to justify the warrantless search.   Third, Thomas maintained that the firearm was not in plain view and therefore, a warrantless search based on the "plain view" doctrine is inapplicable to the facts of this case. Finally, Thomas asserted that he had a reasonable expectation of privacy in the living area and outside yard at 3101 6th Street North where the gun was found.

In response, the Government argued that the Fourth Amendment was not implicated because Thomas had abandoned the shotgun and during a Mirandized questioning, he had denied the shotgun belonged to him.  This Court agrees.

"The warrantless seizure of abandoned property does not violate the Fourth Amendment."  United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citing Abel v. United States, 362 U.S. 217, 241 (1960)).   This is because when an individual voluntarily abandons property, he relinquishes any expectation to privacy they might have had in the property.  See Segars, 31 F.3d at 658 (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.), cert. denied, 464 U.S. 859 (1983)).   In ascertaining whether property has been abandoned, this Court must look to the totality of circumstances available to law enforcement officers, including whether there was a verbal denial of ownership and physical relinquishment of the property.  See United

9

States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999) (citing United States v. Landry, 154 F.3d 897, 899 (8th Cir. 1998), cert. denied, 525 U.S. 1086 (1999); see also Segars, 31 F.3d at 658 ("An expectation of privacy is a question of intent, which 'may be inferred from words spoken, acts done and other objective facts.'") (citations omitted).

The evidence in this case shows that Thomas voluntarily abandoned the shotgun when he left it in the bushes behind an apartment building, never returned to claim it, and denied the firearm was belonged to him during an interrogation.   Accordingly, this Court concludes that Thomas had no legitimate right of privacy under the Fourth Amendment to object to its search and seizure, and his motion to suppress the search and seizure of the gun should be denied.

### C.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Thomas moved this Court for an Order dismissing the Indictment with prejudice on grounds that there is no federal jurisdiction for his prosecution pursuant to 18 U.S.C. § 922(g)(1) and 26 U.S.C. § 5861, because these statutes violate the Constitution.  In this regard, Thomas argued that both counts against him have as an element "possession" of a firearm, and that in light of  Jones v. United States, 529 U.S. 848 (2000), United States v. Morrison, 529 U.S. 598 (2000), and United States v. Lopez, 514 U.S. 549 (1995), the possession prongs of the statutes in question do not bear a sufficient nexus with interstate commerce to fall within the enumerate powers of the federal government.   Further, Thomas argued that the possession prongs of the statutes do not regulate an item in interstate commerce nor do they regulate an activity that substantially affects interstate commerce.

10

In response, the Government asserted that under established law, the Government need only prove that a firearm moved at some point in interstate commerce to meet its jurisdictional burden under 18 U.S.C. § 922(g)(1), the felon in possession statute.[2]   In addition, the Government argued that the Lopez decision did not overrule or modify this jurisdictional requirement.[3]

Section 922(g)(1) provides that:

It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

* * *

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 5861(d) states:

It shall be unlawful for any person—

* * *

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;

In Lopez, the Supreme Court invalidated the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q) on grounds that it exceeded Congress's authority under the Commerce Clause.  This Act made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to

---

[2]   The Government only addressed Thomas's argument as it related to 18 U.S.C. § 922(g)(1).  It did not address his argument as it related to 26 U.S.C. § 5861.

[3]   The Government only addressed the Lopez case.  It did not address Morrison or Jones.

believe, is a school zone." 18 U.S.C. § 922(q)(1)(A).  The Supreme Court held that "the Act exceeds the authority of Congress '[t]o regulate Commerce . . . among the several States . . .'" because the "Act neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce." Lopez, 514 U.S. at 549 (citations omitted).  The Supreme Court also identified three categories of activities which are within the power of Congress to regulate: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or the persons or things in interstate commerce"; and (3) activities which have a "substantial relation to interstate commerce."  Id. at 558-59; Morrison, 529 U.S. at 608-609.

Similarly, in Jones the Supreme Court struck down the Organized Crime Control Act, 18 U.S.C. § 844(i), and in Morrison the Supreme Court struck down the Violence Against Women Act, 42 U.S.C. § 13981.  Both cases invalidated the "statutes as unconstitutional exercises of the Commerce Clause because the statutes were not directed at interstate commerce."  United States v. Gary, 341 F.3d 829, 835 (8th Cir. 2003).

Since Lopez, challenges to the provisions of 18 U.S.C. § 922(g) have been upheld by the Eighth Circuit.  See Gary, 341 F.3d at 835 ("We have repeatedly rejected constitutional challenges to § 922(g)(1). Recently, we upheld the constitutionality of § 922(g)(1) against a Commerce Clause challenge.") (citing United States v. Shepherd, 284 F.3d 965, 969 (8th Cir.2002)); United States v. Bates, 77 F.3d 1101, 1103-04 (8th Cir. 1996) ("Unlike the Gun-Free School Zones Act, an individual case under section 922(g)(1) may fall under either the second or the third categories identified in Lopez . . .

12

.  And unlike the Gun-Free School Zones Act, section 922(g) contains the same type of "express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce" approved in <u>Bass</u>.").

The Eighth Circuit has also upheld § 5861(d) as a valid exercise of the taxing power of Congress and has concluded that § 5861(d) is within the authority granted to Congress under the Constitution.  See <u>United States v. Hall</u>, 171 F.3d 1133, 1142 (8th Cir. 1999) ("We therefore hold that Congress had the authority under the taxing clause to define as a crime the possession of an unregistered silencer."); <u>United States v. Hale</u>, 978 F.2d 1016, 1018 (8th Cir. 1992) ("26 U.S.C. § 5861(d) [is] within the authority granted to Congress under the Constitution.").

Here, Thomas attacks the constitutionality of the statutes.  The overwhelming authority provides that the statutes are constitutional.[4]   Therefore, the Court recommends that Thomas's Motion to Dismiss for Lack of Subject Matter Jurisdiction be denied.

## III.   <u>RECOMMENDATION</u>

For the reasons set forth above, it is recommended that:

1.    Defendant Tyron Thomas's Motion for Suppression of Evidence from Search and Seizure [Docket No. 16] be **DENIED**.

2.    Defendant Tyron Thomas's Motion to Dismiss for Restoration of Civil Rights [Docket No. 18] be **DENIED**.

---

[4]    Whether the Government ultimately can prove that the shotgun moved in interstate commerce under section 922(g) is a question left for trial and is not before this Court.

13

3.      Defendant Tyron Thomas's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 22] be **DENIED**.

4.      Defendant Tyron Thomas's oral Motion to Suppress Statements be **DENIED**.


Dated:        January 3, 2006


_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge


        Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **January 23, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

        Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 23, 2006**.

Thomas R&R.doc